## Stokes License

*William C. Chase*, for appellant.

*G. W. Musser*, for Pennsylvania Liquor Control Board.

BELL, P. J., August 18, 1948.—This is an appeal from the order of the Pennsylvania Liquor Control Board, refusing to grant a restaurant liquor license to Mrs. Grace Stokes. The board, by order dated March 16, 1948, refused to grant the license for the following reasons:

"1. The Act of June 24, 1939, P. L. 806, provides for a quota of four retail licenses for the sale of liquor and malt beverages in Morris Township, Clearfield County, and there are at the present time five such licenses in effect which are of the type counted against said quota. Accordingly, the quota of retail licenses for the said municipality is exceeded.

"2. The board is without authority to grant any additional licenses in the said municipality, except for hotels meeting the requirements of the aforementioned act.

"3. The premises to be covered by the liquor license are directly connected with a portion of the building used in the operation of a grocery store."

We understand that the third objection has been remedied, and the question to be decided is whether a retail beer dispenser's license may be transferred for a retail liquor license, where the number of retail licenses calculated under the terms of the act exceeds the limitation prescribed by law.

The parties have entered into a stipulation in which it was agreed that Mrs. Stokes is now the holder of a retail malt or brewed beverage license and that she offers to surrender such license and to supply the required bond and fees for retail liquor license; that the premises to be used for the liquor license was directly connected with a grocery store, and has been remodeled so that the premises now meet all physical requirements; that the number of licenses permitted in Morris Township is four and that there are now five such licenses in effect; the stipulation concluding with the following:

"That under the board's interpretation of the Quota Act, the quota is exceeded and the board is without authority to grant a retail liquor license to applicant. However, it is the contention of appellant that the board does have authority under the law to exchange a retail liquor license application to applicant upon surrender of her malt beverage license."

Seldom has any legislation caused such a division of opinion among the courts of the Commonwealth. The county courts are not only divided as to whether the Liquor License Quota Act of June 24, 1939, P. L. 806, applies to clubs, but they are likewise divided as to whether a transfer from a malt beverage license to a retail liquor license is a new license within the provisions of the Quota Act. Supporters of the contention that a transfer from one class of license to another does not increase the total number of licenses and, therefore, does not violate the purpose of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as explained in its title, as well as sup-

porters of the argument that if clubs are not to be counted in determining the quota they should not be prohibited from having a license when the quota is exceeded, both have much reasonableness to support their contention. An interpretation of a legislative enactment by the court is often not in accordance with what that court feels would be best, but depends upon the wording of the legislation itself. Unfortunately, the various beverage acts of the Commonwealth are so drawn as to permit varied constructions, which the legislature has consistently refused over the years to change and thus put an end to much that is in dispute.

The brief filed in behalf of the Liquor Control Board cites 18 counties as holding that a transfer from a beer to a liquor license is a new license. The brief, or our investigation, has indicated 10 counties holding that the provisions of the Liquor License Quota Act of 1939 applied only when an additional license was issued. The line of demarcation between these decisions is not in accordance with the lines distinguishing the opinions of the court as to whether the Quota Law applies to clubs, indicating that the opinions are based on the court's interpretation of the act and not on any personal feeling as to the issuance of licenses. The disagreement of the courts involves the same section of the Pennsylvania Liquor Control Act, section 2 of the Act of June 24, 1939, P. L. 806 (47 PS §744-1002), which reads as follows:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting

of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

In the Appeal of Country Club of Harrisburg, 55 D. & C. 65, the Dauphin County courts held that a transfer from a beer to a liquor license was not the issuance of a new license within the meaning of the Liquor Control Act, pointing out that the title to the Liquor Control Act of 1939 reads as follows:

"AN ACT limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defining hotels, and prescribing the accommodations required of hotels in certain municipalities."

The court said that the purpose of the act was to limit the number of licenses, referring to both classes, and that there was no intention to freeze the number at so many beer licenses and so many liquor licenses, but an intention to limit the total number of licenses, based on the population of any particular district; and that so long as one license was surrendered in the place of another license, there was no increase in the number of licenses and the purpose and intent of the act was complied with. The Dauphin County courts are still of the opinion that this section intended the Quota Law to apply to clubs. What the Dauphin County court has done is to read into the act in place of the words "no new license", the words "no new additional license".

In Waltz's Appeal, 61 D. & C. 392, the Dauphin County court affirmed its opinion in the prior case. See also Inch's Appeal, 56 D. & C. 320, and Pennsburg

Fire Co. No. 1 Application, 62 Montg. 227, all to the same effect.

Those courts holding to the contrary base their decision that the law under which a beer license is issued, and the law under which the retail liquor license is issued, are separate acts of assembly. Reference is made to a statement in the opinion of Judge Keller of the Superior Court, in Kester's Appeal, 140 Pa. Superior Ct. 293, in which Judge Keller pointed out that while there was no appeal from the decision of the county court, he affirmed the decision of the lower court in that case. He stated, page 296:

"The respective licenses authorized by the several statutes are different and distinct, and transfers or exchanges from one kind of license to the other are not contemplated, except on the basis of new applications, which are subject to the limitations prescribed by the Act of 1939, P. L. 806, supra."

We need waste little time as to whether this statement is obiter dictum or judicial dictum, as we are not bound by it. Irrespective of what it is, and the effect of Judge Keller's statements, it is entitled to careful consideration. So many of the lower courts have criticized the failure of these acts to provide for an appeal, it would seem that when the Superior Court expresses its opinion it is entitled to serious consideration.

The Beverage License Law and the Liquor Control Act differ in their requirements as to the length of residence of applicant in Pennsylvania. They are separate acts of assembly. Each act provides for a transfer of the licenses regulated by that act, from one person to another or from one place to another, but there is no authorization in either act for an exchange of the type of license therein provided to another kind of license. Not only is the residence of applicant different, but the payment of the license fee differs; the amount of bond required differs; the number of square feet for a restaurant license under the Liquor License Law

differs from the number of square feet for an eating place under the Beverage License Law. The Liquor Control Act provides on a transfer (47 PS §744-408):

"Whenever any license is transferred, no license or other fees shall be required from the person to whom such transfer is made for the balance of the then current license year."

Undoubtedly Mrs. Stokes would be willing to pay the additional license fee and put up the additional bond to comply with the provisions of the Liquor License Law, despite the fact that the license she now holds is under a different and separate act of assembly.

In a recent case of Ciabattari, 63 D. & C. 1, two judges of the Washington County court have held that the transfer from a malt beverage license to a liquor license was not a new license in contemplation of the Liquor License Quota Act of June 14, 1939. The Washington County court recognizes that the licenses were issued under separate acts of assembly and pointed out that the regulation of said licenses, and the beer and liquor business, while originally separate, are now controlled by one board, and that the Quota Law of June 14, 1939, was obviously intended as an amendment of both acts. The court says that the purpose was to control the number of licenses in a community, and not to set a pattern of so many beer and so many liquor licenses. The purpose of the acts was to protect the public welfare and cut down cut-throat competition, which the interpretation of the Dauphin County and Washington County courts would not change. The Washington County court says that if the legislature had intended to freeze the number of licenses as they stand when the quota is reached, the legislature would have said so. Judge Gibson dissented in the Washington County case, holding that is what the legislature did intend. We are in accord with Judge Gibson's opinion, and recall that, in the House of Representatives of the legislature, there were introduced bills in

1941, 1943 and 1945 to amend the Liquor Control Act by providing that an applicant for a malt beverage license should be able to exchange it for a liquor license, and that it not be deemed a new license. None of these bills have ever been enacted so apparently the legislature did not favor such provision, or felt that it was already in the act as decided by the Dauphin and Washington County courts.

As pointed out by the Delaware County court in the Appeal of C. R. Schussler, no. 9, June term, 1946, docket A-1, page 77, in Delaware County (not reported), if there is no prohibition against a transfer from a beer to a liquor license, which are under separate acts of assembly, what restraint would there be between the transfer from a hotel license, as to which there is no limitation, to a restaurant liquor license? See Appeal of Carmine's Restaurant, no. 97, September sessions, 1946, in Erie County (not reported).

It is admitted that these are separate and distinct licenses, issued under separate acts of assembly. The fact that the Liquor License Quota Act may be an amendment to both acts does not join the two acts so that a transfer could be made from one to the other. We see no authority to supply what the legislature has either neglected or intentionally omitted from the act. Coupled with the expression of opinion by the Superior Court that they were separate and distinct licenses, and the transfer from one to the other would be the issuance of a new license, while not binding on this court, in the absence of some legislative authorization, this court has no power to supply the deficiency.

We will make the following

*Order*

Now, August 18, 1948, the appeal of Mrs. Grace Stokes from the decision of the Pennsylvania Liquor Control Board of March 16, 1948, refusing to grant a restaurant liquor license in exchange for a malt beverage license is dismissed at the cost of applicant.